### TEXAS FIRE & CASUALTY UNDER-WRITERS v. WATSON.

### No. 10837.

Court of Civil Appeals of Texas. Galveston.

March 8, 1939.

Rehearing Denied March 30, 1939.

Touchstone, Wight, Gormley & Price, of Dallas, for plaintiff in error.

Tom Wheat, of Liberty, and Thornton & Markwell, of Galveston, for defendant in error.

GRAVES, Justice.

This statement, conceded to be substantially correct, is taken from the insurer's brief:

"This is a suit arising under the Workmen's Compensation Law of Texas (Vernon's Ann.Civ.St. art. 8306 et seq.), and was advanced on appeal, pursuant to this Court's Rule XI(c). It originated in the district court of Galveston County as an appeal from an award of the Industrial Accident Board prosecuted by Texas Fire and Casualty Underwriters, insurer for David J. Joseph, Inc.

"By answer and cross-action Watson sought recovery of compensation on the theory that he had received injuries while working for David J. Joseph, Inc., in Gal-

veston County, Texas, on two occasions, on March 5, 1937, and April 2, 1937, the gist of his complaints being injuries to his back. He alleged that he was as a result of said injuries, permanently and totally incapacitated but alleged in the alternative that if he were mistaken in such allegations, that the nature and extent of his incapacity was unknown to him, and he prayed for such compensation as he might be found to be entitled to.

"In response to claimant's pleadings the insurer filed a general denial.

"Prior to the trial of the case the Texas Fire and Casualty Underwriters took a non-suit. The case was tried upon the cross-action of the claimant, W. C. Watson, and submitted to a jury on certain special issues. The jury found favorably to Watson's claim, found he had sustained injuries in the course of his employment resulting in total and permanent incapacity, that he would suffer hardship and injustice if his compensation were not paid in a lump sum, and fixed his average weekly wage at $25 per week.

"Judgment was rendered by the court in favor of Watson for compensation at the rate of $15 per week for a period of 401 weeks, which, reduced to a lump sum, amounted to $5,121.57, one-third of which was awarded to his attorneys.

"The court extended its term for the purpose of finishing the trial, and thereafter, within the extended term, Texas Fire and Casualty Underwriters, with leave of the court, filed its second amended motion for new trial.

"The motion for new trial was considered and overruled by the court and thereafter this cause was duly removed to this court by writ of error."

On the appeal the determinative question is thus stated in the Insurer's brief:

"Where there is evidence in a compensation case to show that an employee's total disability terminated on April 19, 1937, and the lawsuit brought to determine the claimant's rights is tried in March, 1938, the insurance-carrier is entitled to an unconditional submission to the jury of an issue as to whether or not the claimant's total incapacity was temporary, and it was therefore reversible error in this case for the trial court to instruct the jury not to answer the issue of temporary total incapacity, if they had, in response to previ-

ous issues, found that the claimant was totally and permanently incapacitated."

The facts therein assumed as premises for that proposition of law, despite the Claimant's contrary contention that the evidence did not raise any issue of fact over whether his total disability, as found by the jury, was merely temporary, are found by this court to have been as so asserted; indeed, the Claimant himself expressly admits as much—in arguing the sufficiency of the evidence to sustain the verdict of total and permanent disability—when he says at page 15 of his brief, "Medical testimony in the instant case being conflicting as to the extent and duration of the plaintiff's disability, and the lay testimony likewise conflicting, the jury's verdict must stand."

At all events, there was such a conflict—at least as to the duration of his disability—which, for the purposes of this opinion, may be instanced by reference to the rather full testimony of Dr. Duncan Danforth, the physician to whom the Claimant reported for treatment following his declared-upon injuries, who positively testified that in his opinion the Claimant had been disabled only from April 2 of 1937 to April 19 of 1937; this statement alone—having come from one who was in position from his observation and treatment of the man, as well as having been a properly qualified expert—clearly raised such an issue.

Such being the factual basis underlying it, the quoted proposition is now the law in Texas, under our Supreme Court's decisions in Wright v. Traders & General Ins. Company, 123 S.W.2d 314, and Southern Underwriters v. Wheeler, 123 S.W.2d 340, both of which were rendered subsequent to this trial and the perfection of the appeal therefrom.

The Wright holding particularly ruled a procedural situation in the trial court which was, in all material respects, the counterpart of that existing here; that is, in so far as is necessary to state it, with the pleadings of the parties exactly as they were there, after the court had in issue No. 9 inquired whether Watson's disability was total, it submitted the further detail of whether it was permanent in this way:

"Special Issue No. 10: Do you find from a preponderance of the evidence that such total disability, if any, of W. C.

Watson, to work and earn money is permanent?

"Answer 'Yes' or 'No'.

"If you have answered Special Issue No. 10 'No', and not otherwise, then answer Special Issue No. 11.

"Special Issue No. 11: If you have found that said incapacity for labor, if any, is temporary, state the number of weeks, if any, such disability will continue.

"Answer in figures the number of weeks, if any, such disability will continue."

In other words, the court thus specifically told the jury not to answer issue No. 11 at all—the one on the duration of any temporary total disability that might have been found—unless they had already answered quoted No. 10 to the effect that the total disability they had found was not permanent.

Just as had been done in the Wright case, the Insurer here, without specially requesting an unconditional submission of the inquiry, objected to this instruction between issues No. 10 and No. 11, wherein the court prohibited this jury from answering No. 11 except in the event of having negatively answered No. 10.

Obviously no further discussion upon the law is appropriate here, since the cited holdings are controlling; not even this Claimant argues otherwise, though he does thus rather complainingly comment thereon in his brief: "Thus another blind passage is added to the special issue labyrinth, through which juries must find their way." Rather, after referring to the Wright and Wheeler cases, supra, his answering position, as stated by himself, is this: "It now appears that, where a proper request is made and there is evidence to justify it, a compensation insurance-carrier is entitled to an affirmative and unconditional submission of an issue inquiring whether or not the claimant is partially disabled."

This claim that there was no evidence to raise an issue as to the temporary character of the total disability has already been disposed of; as concerns the further one, that a proper request of an unconditional submission of the matter was indispensable, the Supreme Court in no mistakable terms thus expressly ruled the other way, in this declaration in the Wright case, supra [123 S.W.2d 317]:

"While defendant merely objected to the manner of submitting partial incapacity and made no request that it be submitted negatively, it might, in the light of the views expressed in the dissent, make such request upon another trial. The request, if made, should be denied. Application for writ of error was dismissed rather than refused in the recent case of Traders & General Ins. Co. v. Burns, Tex.Civ.App., 118 S.W.2d 391, for the reason among others that it is intimated in the opinion that the defendant would have been entitled upon request to have the issue of partial incapacity submitted negatively in addition to its affirmative submission."

So the main case the Claimant depends upon in this connection—Traders & General Ins. Co. v. Burns, Tex.Civ.App., 118 S.W.2d 391—is disapproved in so far as favorable to him, and the Supreme Court, in effect, rules that no such request was necessary, although it would have been better practice to make it.

This court had not found the testimony that plaintiff in error contends would have supported a further finding by the jury to the effect that this Claimant's disability had been partial instead of total.

These conclusions require a reversal of the judgment and a remanding of the cause for another trial; it will be so ordered.

Reversed and remanded.